STATE v. BILLY R. PAINTER.

(Filed 26 February 1964.)

**1. Criminal Law § 31;   Evidence § 1—**

The courts will take judicial notice of the county in which a municipality of the State is situate.

**2. Disorderly Conduct and Public Drunkenness—**

"Drunk" within the meaning of G.S. 14-335 is not synonymous with "under the influence of intoxicating liquor" within the intent of G.S. 20-138 and G.S. 20-139, and in a prosecution for public drunkenness an instruction applying the definition of "under the influence of intoxicating liquor" must be held for prejudicial error.

**3. Same—**

"Drunk" within the meaning of G.S. 14-335 is synonymous with "intoxicated", and a person is drunk within the meaning of the statute when he is so far under the influence of intoxicating liquor that his passions are visibly excited or his judgment materially impaired, or when his brain is so far affected by potations of intoxicating liquor that his intelligence, sense-preceptions, judgment, continuity of thought or of ideas, speech and coordination of volition with muscular action, or some of these faculties or processes, are materially impaired.

**4. Criminal Law § 131—**

In order to support judgment for a repeated offense the warrant or indictment should set forth that the prosecution is for a repeated offense and the time and place of the prior convictions of defendant. G.S. 15-147.

APPEAL by defendant from *Huskins, J.,* December 1963 Criminal Session of BUNCOMBE.

Criminal prosecution upon a warrant issued by the police court of the city of Asheville charging defendant on 2 November 1963 with being drunk in a public place in the city of Asheville, and that he had been convicted of the same offense more than two times within a period of twelve months next preceeding 2 November 1963. G.S. 14-335.19. From a conviction and judgment in the police court, defendant appealed to the superior court.

In the superior court he was tried on the warrant and pleaded not guilty. Verdict: Guilty as charged.

From a judgment of imprisonment of not less than 12 months nor more than 24 months, he appeals.

*Attorney General T. W. Bruton and Assistant Attorney General Richard T. Sanders for the State.*

*Walter Clark, Jr., for defendant appellant.*

PARKER, J.   The warrant was based on G.S. 14-335, which reads in relevant part: "If any person shall be found drunk or intoxicated on the public highway, or at any public place * * *, in any county, township, city, town * * *, he shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in this section." Subsection 19 reads:

"In Buncombe County, by a fine, on the first offense, of not more than fifty dollars ($50.00), or imprisonment for not more than thirty (30) days; for the second offense within a period of twelve (12) months by a fine of not more than one hundred dollars ($100.00) or imprisonment for not more than sixty (60) days; and for a third or subsequent conviction of the same offense within any twelve (12) months period, such is to be declared a misdemeanor, punishable as a misdemeanor, within the discretion of the court."

We take judicial notice of the fact that the city of Asheville is the county seat of Buncombe County. *Chappell v. Stallings,* 237 N.C. 213, 216, 74 S.E. 2d 624, 627.

The State's evidence shows these facts: About 8:25 p.m. on 2 November 1963 defendant was drunk in an automobile on 120 Clayton Street in the city of Asheville. He had the smell of alcohol upon him. He was arrested by police officers of the city for drunkenness and carried to police headquarters. Two other persons who had been drinking were with defendant. On 12 August 1963 defendant pleaded guilty to a charge of being drunk; on 21 August 1963 he pleaded guilty of the same offense; and on 17 September 1963 he pleaded guilty of the same offense.

Defendant testified in his own behalf in substance: He had drunk some alcoholic beverage that morning. He has had a silver plate in his head since he was eight years old. This plate causes him to have black out spells always when he gets hot. He has these spells walking, when he gets hot. Sitting in the automobile he got hot and had a black out spell. He does not know when he was arrested that night by reason of his black out spell. He had been in jail several times this year for public drunkenness.

The warrant charges defendant with being drunk in a public place in the city of Asheville. Defendant assigns as error this part of the charge:

"The word drunkenness or being drunk or being under the influence of intoxicating beverages are synonymous, and to be drunk or under the influence of intoxicants means that a person has drunk a sufficient quantity of some intoxicating beverage as to cause him to lose the normal control of his mental or physical faculties to such an extent that there is an appreciable impairment of either or both

of those faculties. If a man has drunk that much of an alcoholic beverage to have that effect upon him, then the law says he is drunk or he's under the influence. If he hasn't consumed enough to have that effect upon him, then the law says he is sober. It just draws the line at that point and there is no such thing as being just a little bit drunk or a little bit sober, you're either drunk or you're sober and if he has taken enough to cause him to lose the normal control of his mental faculties or his physical faculties to such an extent that either or both of those faculties are appreciably impaired, then he's drunk. If he hasn't had that much, he's sober."

The vice of this instruction is that the trial judge charged the jury to the effect that there is no distinction between being "drunk" within the intent and meaning of G.S. 14-335 and being "under the influence of intoxicating liquor" within the intent and meaning of G.S. 20-138 and G.S. 20-139. He charged the jury in effect that the word "drunk" within the intent and meaning of G.S. 14-335 is synonymous with the words "under the influence of intoxicating beverages," and that a man is drunk if he has "drunk a sufficient quantity of some intoxicating beverage as to cause him to lose the normal control of his mental or physical faculties to such an extent that there is an appreciable impairment of either or both of those faculties," which is a practically verbatim quotation of the language of the present Chief Justice in the case of *S. v. Carroll*, 226 N.C. 237, 37 S.E. 2d 688, in defining the words "under the influence of intoxicating liquor" within the intent and meaning of G.S. 20-138 in respect to persons driving an automobile upon the public highway while under the influence of intoxicating liquor. In other words, the trial judge instructed the jury in effect that there is no distinction between being "drunk" and being "under the influence of intoxicating liquor" as defined in the *Carroll* case, and that it was only necessary to prove that a man was "under the influence of intoxicating liquor" as defined in the *Carroll* case to secure a conviction under G.S. 14-335.

The following cases hold that there is a distinction between being drunk and being under the influence of intoxicating liquor, and that a driver of an automobile can be under the influence of intoxicating liquor within the intent and meaning of a statute prohibiting the operation of a motor vehicle "while under the influence of intoxicating liquor" without being drunk in the accepted meaning of that word. *Ballard v. State,* 25 Ala. App. 457, 148 So. 752; *People v. Haeussler,* 41 Cal. 2d 252, 260 P. 2d 8, cert. den. 347 U.S. 931, 98 L. Ed. 1082, overruled on other grounds in *People v. Cahan,* 44 Cal. 2d 434, 282 P. 2d 905, 50 A.L.R. 2d 513, disapproving to the extent they indicate a contrary holding, *Taylor v. Joyce,*

4 Cal. App. 2d 612, 41 P. 2d 967, and *People v. Lewis,* 4 Cal. App. 2d Supp. 775, 37 P. 2d 752; *Cannon v. State,* 91 Fla. 214, 107 So. 360; *Hart v. State,* 26 Ga. App. 64, 105 S.E. 383; *Wallace v. State,* 44 Ga. App. 571, 162 S.E. 162; *Shorter v. State,* 234 Ind. 1, 122 N.E. 2d 847, 52 A.L.R. 2d 1329; *Klaser v. State,* 89 Ind. App. 561, 166 N.E. 21; *Com. v. Lyseth,* 250 Mass. 555, 146 N.E. 18; *State v. Noble,* 119 Ore. 674, 250 P. 833; *Com. v. Buoy,* 128 Pa. Super. Ct. 264, 193 A. 144; *Com. v. Long,* 131 Pa. Super. Ct. 28, 198 A. 474; Wharton's Criminal Law, Ed. Anderson (1957), Vol. III, sec. 991, p. 165; Annotation 142 A.L.R. 561; 7 Am. Jur. 2d, Automobiles and Highway Traffic, sec. 257.

In *Shorter v. State, supra,* the Court quoted with approval from *Klaser v. State,* 89 Ind. App. 561, 562, 166 N.E. 21, as follows:

"The offense defined by the statute is not the operation of a motor vehicle by one who is drunk or intoxicated, but 'while under the influence of intoxicating liquor.' It is evident that in the enactment of the statute the lawmakers intended to relieve the state from making proof that the offender was drunk, in the meaning of that word as commonly used."

In *Cannon v. State, supra,* the Supreme Court of Florida said:

"Though all persons intoxicated by the use of alcoholic liquors are 'under the influence of intoxicating liquors,' the reverse of the proposition is not true; for a person may be under the influence of intoxicating liquors without being *intoxicated.*"

In *State v. Noble, supra,* defendant was convicted of driving an automobile on a public street while under the influence of intoxicating liquor. The Court said:

"A person, when drunk, is in an intoxicated condition, and of necessity is under the influence of intoxicating liquor; but a person may be under the influence of intoxicating liquor, within the meaning of this statute, and not be drunk."

In *Com. v. Lyseth, supra,* defendant was convicted of operating an automobile while under the influence of intoxicating liquor. The Court said:

"The Commonwealth was not required to prove that the defendant was drunk. 'Whatever difficulties there may be in framing * * * a definition of the extent of inebrity which falls short of and which constitutes drunkenness, there is a distinction between that crime on the one hand and merely being under the influence of

liquor on the other hand, which is recognized in common speech, in ordinary experience, and, in judicial decisions'."

In *S. v. Carroll, supra,* this Court said: "It will be noted that in the case of *Wilson v. Casualty Co., supra* [210 N.C. 585, 188 S.E. 102], the Court made a distinction between a person who is drunk and one under the influence of or affected by liquor." The *Wilson* case was an action to recover on an accident policy. The company admitted issuance of the policy and that it was in force at the time, but denied liability under a proviso in the policy that the policy does not cover any loss sustained while intoxicated, or under the influence of or affected by intoxicants. The Court used this language:

> "The words 'intoxicated' and 'drunk' are commonly regarded as synonymous. *Bragg v. Commonwealth,* 133 Va. 645; *Mutual Life Ins. Co. v. Johnson,* 64 Okla. 222; Black's Law Dictionary (3d Ed.), p. 624, citing à wealth of authorities, defines 'drunk' as follows: 'A person is "drunk" when he is so far under the influence of liquor that his passions are visibly excited or his judgment impaired, or when his brain is so far affected by potations of liquor that his intelligence, sense-perceptions, judgment, continuity of thought or of ideas, speech, and coordination of volition with muscular action (or some of these faculties or processes) are impaired or not under normal control'."

Black's Law Dictionary, 4th Ed., defines the word "drunk" as its 3rd Ed. defined it, as set forth in the *Wilson* case, and cites the *Wilson* case. The 4th Ed. of Black further states, "It [drunk] is a synonym of intoxicated."

Webster's New International Dictionary, 2d Ed., defines the word "drunk" as follows: "1. Intoxicated with or as with strong drink; under the influence of an intoxicant, esp. an alcoholic liquor, so that the use of the faculties is materially impaired; inebriated;—used predicatively." This definition from Webster is quoted in *Gault v. State,* 42 Okla. Cr. 89, 274 P. 687.

In *State v. Mann,* 143 Me. 305, 61 A. 2d 786, the Court said: "The word 'intoxicated' is a synonym for 'drunk.' 'Intoxicated' commonly and usually means inebriated to such an extent that the mental or physical faculties are materially impaired."

Before the State is entitled to a conviction within the intent and meaning of G.S. 14-335, upon which the warrant here is based, it must satisfy the jury beyond a reasonable doubt from the evidence that defendant was drunk or intoxicated in a public place. The word "drunk" is a syn-

STATE *v.* PAINTER.

onym for the word "intoxicated." And a person is "drunk" or "intoxicated" within the intent and meaning of G.S. 14-335, when he is so far under the influence of intoxicating liquor that his passions are visibly excited or his judgment materially impaired, or when his brain is so far affected by potations of intoxicating liquor that his intelligence, sense-perceptions, judgment, continuity of thought or of ideas, speech and coordination of volition with muscular action, or some of these faculties or processes are materially impaired. In our opinion, this is the definition of "drunk" or "intoxicated" recognized "in common speech, in ordinary experience, and, in judicial decisions."

In *Wilson v. Casualty Co., supra,* the trial judge instructed the jury in part: "And that means, intoxicated means, in law, that the subject must have drunk of alcoholics to such an extent as to appreciably affect and impair his mental or bodily faculties, or both." This Court in discussing an assignment of error to the charge, of which this quoted sentence was a part, said, "Under the terms of the policy the charge is favorable to defendant." The trial judge's definition of "intoxicated" is disapproved.

The warrant here does not set forth that the offense charged on 2 November 1963 was a fourth offense, and further does not set forth the time and place of the alleged convictions of defendant of being drunk or intoxicated in a public place within a period of twelve months next preceding 2 November 1963. While the particularity required in an indictment is not essential in a warrant *(Moser v. Fulk,* 237 N.C. 302, 74 S.E. 2d 729; *S. v. Jones,* 88 N.C. 671), and while defendant makes no point of it on this appeal, it would seem desirable, if not necessary, that the warrant should be amended in the superior court below to allege such facts. G.S. 15-147; *S. v. White,* 246 N.C. 587, 99 S.E. 2d 772; *S. v. Stone,* 245 N.C. 42, 95 S.E. 2d 77; *S. v. Walker,* 179 N.C. 730, 102 S.E. 404; 42 C.J.S., Indictments and Informations, sec. 145.

The assignment of error to the charge is good; it was prejudicial to defendant and entitles him to a

New trial.